1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11   LEONARDO A.,[1]                    Case No. 2:19-cv-05395-MAA

12                    Plaintiff,

13          v.                          **MEMORANDUM DECISION AND
                                        ORDER AFFIRMING DECISION OF
14                                      THE COMMISSIONER**

15   ANDREW M. SAUL,[2]
     Commissioner of Social Security,

16
                     Defendant.
17

18

19          On June 20, 2019, Plaintiff filed a Complaint seeking review of the Social

20   Security Commissioner's final decision denying his application for a period of

21   disability and disability insurance benefits pursuant to Title II of the Social Security

22   Act.  This matter is fully briefed and ready for decision.  For the reasons discussed

23   below, the Court affirms the final decision of the Commissioner.

24

---

25   [1]  Plaintiff's name is partially redacted in accordance with Federal Rule of Civil
     Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
26   Administration and Case Management of the Judicial Conference of the United
     States.
27

28   [2]  The Commissioner of Social Security is substituted as the Defendant pursuant to
     Federal Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

On September 17, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on May 8, 2015.  (Administrative Record ("AR") 181-84.)  Plaintiff alleged disability because of a neck injury, a herniated disc, a slipped disc, a lower back injury, numbness and tingling in his hands and feet, a shoulder injury, and diabetes.  (AR 215.)

Plaintiff's application was denied.  (AR 105-10.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 178-80.)  On December 13, 2017, ALJ Bruce Cooper held a hearing.  Plaintiff appeared with counsel and testified at the hearing.  (AR 44-92.)

In a decision issued on April 26, 2018, the ALJ denied Plaintiff's application.  (AR 7-27.)  The ALJ made the following findings pursuant to the Commissioner's five-step evaluation:  first, Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.  (AR 12.)  Second, he had the following severe impairments:  degenerative disc disease of the cervical and lumbar spine; diabetes mellitus; neuropathy; left shoulder bursitis; and obesity.  (AR 28-30.)  Third, he did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments.  (AR 30-31.)

Fourth, Plaintiff had a residual functional capacity ("RFC") to perform light work with the following limitations:  he could not lift or carry more than 20 pounds occasionally and 10 pounds frequently, and he could not stand or walk for more than six hours in an eight-hour workday.  Plaintiff could push and pull as much as he could lift and carry, but was limited to occasional overhead reaching with the left upper extremity.  He could climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; balance frequently; and stoop, kneel, crouch, and crawl occasionally.  Plaintiff could work at unprotected heights frequently; work with

///

1  moving mechanical parts frequently; and be exposed to dust, fumes, odors,

2  pulmonary irritants, extreme cold, and vibration frequently.  (AR 31-38.)

3      At the fifth step, the ALJ found that Plaintiff could perform his past relevant

4  work as a press machine operator.  (AR 38.)  The ALJ thus concluded that Plaintiff

5  was not disabled as defined by the Social Security Act.  (AR 39.)

6      On April 30, 2019, the Appeals Council denied Plaintiff's request for review.

7  (AR 1-9.)  Thus, ALJ's decision became the final decision of the Commissioner.

8

9                          **DISPUTED ISSUE**

10     The parties raise the following disputed issue:

11     1.  Whether the ALJ properly considered Plaintiff's testimony.

12  (Joint Stipulation ("JS") 4.)

13

14                        **STANDARD OF REVIEW**

15     Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final

16  decision to determine whether the Commissioner's findings are supported by

17  substantial evidence and whether the proper legal standards were applied.  *See*

18  *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir.

19  2014).  Substantial evidence means "more than a mere scintilla" but less than a

20  preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter*

21  *v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Substantial evidence is "such

22  relevant evidence as a reasonable mind might accept as adequate to support a

23  conclusion."  *Richardson*, 402 U.S. at 401.  The Court must review the record as a

24  whole, weighing both the evidence that supports and the evidence that detracts from

25  the Commissioner's conclusion.  *Lingenfelter*, 504 F.3d at 1035.  Where evidence is

26  susceptible of more than one rational interpretation, the Commissioner's

27  interpretation must be upheld.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

28  2007).

**DISCUSSION**

**A.    Legal Standard.**

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause alleged subjective symptoms, the ALJ may reject a claimant's allegations upon:  (1) finding evidence of malingering; or (2) providing clear and convincing reasons, supported by substantial record evidence, for so doing.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  The ALJ's determination must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ."  *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted).

**B.    Background.**

   **1.    Objective medical evidence.**

      **a.    Left shoulder.**

In December 2006, Plaintiff injured his left shoulder at work.  He complained of pain in the neck and left shoulder.  (AR 361-68.)  A February 2007 left shoulder MRI revealed degenerative change at the acromioclavicular joint and humeral head with narrowing of the shoulder joint, representing mild degenerative change; and slight increased signal at the distal supraspinatus tendon, representing probable tendinitis.  (AR 465.)  In July 2015, a treating physician found decreased range of motion in Plaintiff's left shoulder, with reports of pain.  (AR 772.)  Plaintiff had normal strength and range of motion in November 2015, with no positive findings or evidence of atrophy.  (AR 947-48.)

At his January 2016 consulting examination, Plaintiff had tenderness in the left shoulder and difficulty fully raising the arm, but his range of motion was grossly within normal limits.  (AR 302.)  In April 2016, a treating physician found

left shoulder impingement and a positive Hawkins sign on physical examination, with decreased range of motion by less than 100 degrees.  (AR 841.)  In August 2016, Plaintiff had a left shoulder injection.  (AR 840.)  That same month, Plaintiff reported that the injection improved his symptoms by 50%, with only a slight return of symptoms.  (AR 833.)  Plaintiff reported that as a result, he was not interested in left shoulder surgery.  (AR 834.)  Plaintiff's treating physician reported "significantly improved" range of motion.  (*Id.*)

### b. Lumbar spine and cervical spine.

In July 2010, Plaintiff slip and fell at work and suffered an injury to his back and hip.  (AR 516.)  In August 2010, he was diagnosed with lumbar strain and radiculopathy.  (AR 486.)  The injury was treated with painkillers and physical therapy.  (*See* AR 486, 507.)  A February 2011 radiography of Plaintiff's lumbar spine revealed a 5.2mm central disc protrusion at L4-L5, with mild thecal sac impression, bilateral facet arthrosis, and mild to moderate foraminal narrowing.  (AR 802.)  At L5-S1, the radiography revealed a 2.8mm circumferential disc bulge, with mild thecal sac impression, mild bilateral facet arthrosis, and mild bilateral neural foraminal narrowing.  (AR 803.)

After the May 2015 alleged onset date, Plaintiff reported increasing pain in his neck and back.  Plaintiff described the pain as continuous aching, often becoming sharp and shooting pain, with episodes of numbness and tingling.  The pain increased with activity.  (*See*, *e.g.*, AR 770-71, 855-56.)  In July 2015, Plaintiff's treating physician reported slightly decreased range of motion in Plaintiff's cervical spine, with reported discomfort.  (AR 772.)  As to Plaintiff's lumbar spine, the treating physician reported slightly decreased range of motion, with pain and discomfort and positive signs on the right.  (AR 773-74.)  During this period, Plaintiff was prescribed a topical agent for his lumbar pain.  (AR 842, 862.) ///

1    Plaintiff reported that the lotion provided pain relief and improved his functional

2    status.  (AR 841-42.)

3         At his January 2016 consulting examination, Plaintiff had grossly normal

4    range of motion in his cervical spine.  (AR 301.)  He had localized tenderness in his

5    lumbar spine, with reduced range of motion and no evidence of radiculopathy.  (AR

6    302.)  A July 2016 MRI of Plaintiff's lumbar spine revealed a disc protrusion at L4-

7    L5 and L5-S1 with lateral recess stenosis, mainly on the right side.  (AR 721, 864-

8    65.)  In August 2016, Plaintiff reported to a treating physician that he did not want

9    injections or surgery for his neck or back.  (AR 839.)

10        In May 2017, Plaintiff reported to a treating physician that he had constant

11   and more severe lower back pain which radiated down his left leg.  (AR 720.)

12   Physical examination revealed tenderness and spasm over the lumbar spine with

13   decreased range of motion and positive straight left leg raising, with decreased

14   sensation over the L5 and S1 distributions on the left side.  (AR 721.)  Plaintiff's

15   physician recommended an L4-L5 epidural injection.  (*Id.*)  In July 2017, however,

16   the physician reported that Plaintiff was not undergoing any therapy or other

17   treatment modalities for his neck and back.  (AR 715.)

18

19             **c.    Diabetes.**

20        Plaintiff had a history of non-insulin-dependent diabetes mellitus.  (*See* AR

21   499.)  In February 2014, Plaintiff had a blood glucose level of 249 mg/dL.  (AR

22   288.)  In November 2015, plaintiff's blood glucose level was 273 mg/dL and his

23   hemoglobin A1c level was 11.2%.[3]  (AR 326, 328.)  Plaintiff was prescribed

24   metformin, but by October 2015, he had stopped taking it.  (AR 321.)  In December

25   ///

26   _____

27   [3]  According to the lab report, the "reference" range for blood glucose level is 65-99
     mg/dL.  (AR 326.)  The reference range for hemoglobin A1c level is <5.7%.  (AR

28   328.)

1    2015, he reported to a treating source that he was not checking his blood sugar

2    regularly.  As well, he denied numbness and tingling.  (AR 318.)

3         In January 2016, Plaintiff's blood glucose level measured 312 mg/dL.  (AR

4    330.)  In his consulting examination that same month, Plaintiff reported paresthesia

5    and numbness at the bottom of his feet.  (AR 302.)  In April 2016, his blood

6    glucose level was 194 mg/dL.  (AR 334.)  He was diagnosed with type II diabetes

7    mellitus "with other diabetic kidney complication."  (AR 314.)

8         By October 2016, Plaintiff's hemoglobin A1c level had dropped to 8.1%.

9    (AR 337.)  His blood glucose level measured 140 mg/dL.  (AR 334.)  In January

10   2017, a treating source described Plaintiff's diabetes as "stable" and "without

11   complications."  (AR 308-09.)  The treating source noted, "[Patient] has been

12   improving with diet and exercise, A1C has decreased in recent years . . . ."  (AR

13   308.)  That same month, Plaintiff's hemoglobin A1c level measured 8.7% and his

14   blood glucose level measured 165 mg/dL.  (AR 339, 341.)  In May 2017, Plaintiff

15   reported to a treating physician that his diabetes was under control.  (AR 720.)  The

16   record does not indicate that Plaintiff suffered end organ damage, vision problems,

17   or hand problems resulting from his diabetes.  (*See generally* AR 258 *et seq.*)

18

19              **d.    Depression and anxiety.**

20        Prior to the May 2015 disability onset date, Plaintiff had multiple emergency

21   room visits during which he sought treatment for symptoms of anxiety, such as

22   difficulty sleeping and a rapid heartbeat.  His symptoms were treated with anti-

23   anxiety medication, such as lorazepam.  (*See, e.g.*, AR 266, 290-91, 384, 386, 551.)

24   After his work-related injuries, he sometimes reported additional symptoms such as

25   social isolation and feelings of helplessness and hopelessness.  He attributed his

26   overall worsened mood to the physical and financial losses resulting from the

27   injuries.  (*See, e.g.*, AR 726, 734, 738, 760.)

28   ///

7

In November 2015, Plaintiff reported numerous symptoms of anxiety and depression. (AR 751, 761.) His Beck Anxiety Inventory ("BAI") revealed severe positive findings and his Beck Depression Inventory ("BDI") revealed moderate positive findings. (AR 751-52.) Plaintiff's June 2016 BAI and BDI indicated moderate depression and high anxiety. (AR 905.) As of June 2016, however, he was not taking any psychiatric medication. (AR 911.) Rather, his symptoms were treated with group therapy and relaxation techniques. (*See* AR 734, 764.) In May 2016, Plaintiff reported some improvement in his symptoms as a result of treatment. (AR 734.) The record does not indicate that Plaintiff was ever hospitalized in a psychiatric facility. (*See generally* AR 258 *et seq.*)

### 2.   Plaintiff's testimony.

At the hearing, Plaintiff testified that he had problems with his left arm and back. (AR 63-64.) These problems caused him to experience pain and difficulty when he tried to work. (AR 64.) He worked at See's Candies as a picker from November 2016 to January 2017, but the job ended because it required too much bending and overhead work. (AR 50, 58-59, 63-64.) He worked at Aero Tech in a janitorial position for two months in 2017. (AR 50-51.) The job ended because it involved a lot of weights, bending, and overhead reaching, which was too hard for him. (AR 56-58.)

Plaintiff testified that he lived with his wife and three of his children. (AR 53.) His wife worked the night shift at a factory, putting in 40 to 50 hours a week. (AR 54-55.) Plaintiff had a driver's license and drove twice a day to take his children to and from their respective schools. (AR 51-52, 55-56.)

Plaintiff testified that he could lift no more than 20 pounds and could stand or walk for no longer than one hour. (AR 64.) Plaintiff testified that being outside of the house caused him anxiety, for which he took medication. (AR 65-66.)
///

8

### 3.      The ALJ's rationale.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 32.)  The ALJ asserted, "[D]espite [Plaintiff's] allegations of pain and limited functioning, the objective medical findings in the record revealed largely unremarkable findings and symptoms that were otherwise reasonably controlled with conservative treatment modalities."  (AR 32.)

## C.      Analysis.

Plaintiff asserts that an ALJ may not discount allegations of pain merely because the objective medical evidence does not support them.  (JS 7 (citing *Bunnell*, 947 F.2d at 345).)  Plaintiff is correct.  An ALJ may not premise the rejection of the claimant's testimony regarding subjective symptoms solely on the lack of medical support.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  This approach "reflects the highly subjective and idiosyncratic nature of pain and other such symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

However, contrary to Plaintiff's assertion (JS 7), the ALJ did not discount Plaintiff's testimony regarding his subjective symptoms *solely* because it lacked objective medical support.  Rather, the ALJ relied, as well, on Plaintiff's conservative medical treatment.  (*See* AR 32.)  As discussed below, both grounds for discounting Plaintiff's subjective symptoms were clear, convincing, and supporting by substantial evidence.

///

///

9

1       **1.     The lack of objective medical support.**

2       Although an ALJ may not premise the rejection of the claimant's testimony

3  regarding subjective symptoms *solely* on the lack of medical support (*Light*, *supra*;

4  *Lester*, *supra*), weak objective support may undermine subjective complaints of

5  disabling symptoms.  *Regennitter v. Commissioner of Soc. Sec. Admin.*, 166 F.3d

6  1294, 1297 (9th Cir. 1999) (ALJ's finding that subjective complaint is "inconsistent

7  with clinical observations" can constitute clear and convincing reason for rejecting

8  testimony if supported by specific findings).  Here, the ALJ discussed the clinical

9  record at length and resolved conflicts therein according to his medical judgment.

10  (*See* AR 29-30, 32-34.)

11       With respect to Plaintiff's cervical and lumbar spine, the ALJ emphasized

12  that the clinical findings from July 2015 showed minimally decreased range of

13  motion in the cervical spine, and discomfort rather than pain.  (AR 33.)  Further, at

14  the January 2016 consulting examination, Plaintiff had grossly normal motion in

15  the cervical spine and no more than local tenderness and limited range of motion in

16  the lumbar spine, with no muscle spasm or radiculopathy.  (*Id.*)  The ALJ

17  acknowledged the findings from November 2015 and May 2017, which included

18  objective evidence of pain and tenderness.  (*See* AR 32-33.)  However, the ALJ

19  evidently found the July 2015 and January 2016 findings more persuasive.

20       Similarly, the ALJ acknowledged Plaintiff's cervical spine and lumbar spine

21  imaging, but did not find that the imaging supported Plaintiff's claims of disabling

22  pain.  (*See id*.)  Although the objective evidence could rationally support an

23  interpretation more favorable to Plaintiff, the ALJ's interpretation is reasonable.

24  Therefore, the Court must defer to it.  *See Orn*, *supra*; *see also Batson v. Comm'r of*

25  *Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("When the evidence before

26  the ALJ is subject to more than one rational interpretation, [the court] must defer to

27  the ALJ's conclusion").

28  ///

1    Regarding Plaintiff's left shoulder, the ALJ took note of the July 2015
2  findings of painful, decreased range of motion and the April 2016 findings of
3  decreased range of motion and left shoulder impingement.  (AR 34.)  The ALJ gave
4  greater weight, however, to the November 2015 and January 2016 findings of
5  normal/generally normal range of motion and strength.  (*Id.*)  The ALJ cited, in
6  addition, Plaintiff's August 2016 left shoulder injection, which resulted in
7  significantly improved range of motion and a reported 50% decrease in symptoms.
8  In light of the foregoing evidence, the ALJ reasonably concluded that the medical
9  evidence undermined Plaintiff's claims regarding his left shoulder subjective
10 symptoms.

11    As to Plaintiff's diabetes and related symptoms, the ALJ reviewed Plaintiff's
12 blood glucose and hemoglobin Alc levels from February 2014 through January
13 2017.  (AR 33.)  As set forth above, Plaintiff's blood glucose level measured 249
14 mg/dL in February 2014, but was down to 165 mg/dL by January 2017.  Plaintiff's
15 hemoglobin Alc levels followed a similar trajectory, measuring 11.2% in November
16 2015 and 8.7% in January 2017.  The ALJ acknowledged that Plaintiff's levels
17 were "elevated," but emphasized that (1) they were trending downwards; and (2)
18 there was no evidence that Plaintiff suffered end organ damage, vision problems, or
19 hand problems as a result of his diabetes.  (AR 33.)  Therefore, the ALJ reasonably
20 found that the objective evidence undermined Plaintiff's subjective claims
21 regarding his diabetes.

22    Finally, after reviewing Plaintiff's mental health records, the ALJ concluded
23 that Plaintiff's anxiety and depression were nonsevere[4] because (*inter alia*)
24 Plaintiff's mental status examinations revealed "negative findings."  (AR 29.)  As
25 Plaintiff's November 2015 and June 2016 BAI and BDI scores were positive for

26

_____

27 [4] Plaintiff does not challenge the ALJ's nonseverity finding *per se*.  (*See generally*
   JS.)  Because Plaintiff testified to being anxious when leaving the house, the Court
28 addresses the finding out of an abundance of caution.

anxiety and depression, the Court is dubious of the ALJ's reasoning.  However, because the ALJ provided other, valid grounds for finding Plaintiff's anxiety and depression nonsevere, the Court concludes that any error was harmless.  *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination"); *see also Batson*, 359 F.3d at 1197 (error in asserting that plaintiff sat while watching television was harmless where ALJ provided numerous other reasons supported by substantial evidence for discounting plaintiff's testimony).

### 2.      Conservative treatment; lack of treatment; effective treatment.

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  So is evidence of a lack of treatment, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), or an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Here, as the ALJ emphasized (AR 33), Plaintiff's treating physicians recommended epidural injections and/or surgery for Plaintiff's neck and back, but Plaintiff declined to pursue those treatment options.  Rather, after the alleged onset date, Plaintiff merely used a topical agent for his back.  And as the ALJ asserted (*id.*), the record indicates that in July 2017, Plaintiff was reportedly not undergoing any therapy or other treatment for his spinal impairments.

Plaintiff asserts that he has not undergone cervical or lumbar surgery because he is afraid of surgery generally.  (JS 9 (citing AR 60-62 (hearing testimony indicating that Plaintiff skipped a scheduled hernia surgery out of fear)).)  Plaintiff asserts, as well, that surgery for his neck and back has been suggested rather than prescribed.  "'It is improper,'" Plaintiff argues, "'to deny benefits on the basis of declined surgery, when surgery is only a suggested rather than a prescribed course

of treatment.'" (JS 8 (quoting *Aguirre v. Astrue*, 2009 WL 3346741, at *5 (C.D. Cal. Oct. 14, 2009)).) These arguments do not avail Plaintiff. First, the record reflects that Plaintiff is not entirely surgery-avoidant, in that he has a reported history of gallbladder and jaw surgeries. (*See* AR 300.) Second, the fact remains that after the alleged onset date, Plaintiff's treatment for his neck and back was limited or nonexistent. Therefore, the ALJ reasonably concluded that Plaintiff's conservative treatment undermined his subjective claims with regard to those impairments.

Plaintiff did undergo an injection for his shoulder. And as the ALJ noted (AR 34), Plaintiff reported a significant decrease in symptoms as a result. An ALJ may discredit a claimant's subjective claims regarding the severity of an impairment where the record reflects that the impairment is controlled by treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ reasonably discounted plaintiff's complaints of disabling pain and diabetes where plaintiff responded favorably to, *e.g.*, physical therapy and lumbosacral corset and diabetes was controlled by medication). Therefore, the ALJ reasonably found Plaintiff less than credible with regard to his testimony of disabling shoulder symptoms.

As to Plaintiff's diabetes, the ALJ correctly noted that Plaintiff reported noncompliance with his diabetes management in October 2015 and April 2016. (AR 33.) Arguably, Plaintiff's failure to follow his prescribed diabetes treatment is a permissible ground for finding him less than credible with regard to his claims of disabling diabetes symptoms. *See Fair*, *supra*. And as the ALJ noted (AR 33), a treating source noted in January 2017 that Plaintiff had been "improving with diet and exercise," and Plaintiff reported in May 2017 that his diabetes was under control. As the treating source indicated (*see* AR 308), Plaintiff's improvement in diabetes management coincided with a decrease in his blood glucose and hemoglobin A1c levels. Therefore, the ALJ reasonably concluded that Plaintiff's diabetes "should be amenable to proper control by adherence to recommended

medical management and medication compliance."  (AR 33.)  In turn, the impairment's amenability to proper treatment undermined his claims of disabling symptoms.  *See Tommasetti*, *supra*.

With regard to Plaintiff's depression and anxiety, the ALJ acknowledged Plaintiff's history of ER visits for anxiety.  (AR 29.)  The ALJ noted, however, that (1) Plaintiff had never been hospitalized in a psychiatric facility; and (2) as of June 2016, Plaintiff was not taking any psychiatric medications.  (*Id.*)  This evidence of conservative treatment (or no treatment) was sufficient to discount Plaintiff's claims of disabling anxiety.  *See Parra*, *supra*; *see Burch*, *supra*; *see also* AR 32 (asserting that Plaintiff's claimed limitations were "not entirely consistent" with "other evidence in the record").

### 3.    Plaintiff's daily activities.

An ALJ may discredit a claimant's allegations by pointing to evidence that he is able to engage in activities that would translate to a workplace setting, upon making specific findings relating to those activities.  *Burch*, 400 F.3d at 680-81. The relevant question, however, is whether the physical activities at issue consume a "substantial part" of the claimant's day.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  "[M]any home activities are not easily transferrable to what may be the more grueling environment of the workplace, where it may be impossible to periodically rest or take medication."  *Fair*, 885 F.2d at 603.

Here, at step four of the sequential evaluation process, the ALJ recited Plaintiff's testimony regarding his daily activities.  (AR 32.)  However, the ALJ did not explicitly find that this testimony was inconsistent with his claims of disabling pain and other subjective symptoms.  (*See id.*)  Plaintiff argues, accordingly, that the Court may not rely on Plaintiff's daily activities as grounds for upholding the ALJ's decision.  (JS 9; *see Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("We review only the reasons provided by the ALJ in the disability determination

1  and may not affirm the ALJ on a ground upon which he did not rely").)  Plaintiff

2  argues, in addition, that his daily activities do not demonstrate that he is capable of

3  maintaining substantial gainful activity.  (JS 9-11.)  Because the ALJ provided

4  other, valid grounds for discounting Plaintiff's testimony, the Court need not

5  consider these arguments.[5]  *See Batson*, 359 F.3d at 1197.

6

7                                         **ORDER**

8          It is ordered that Judgment be entered affirming the final decision of the

9  Commissioner of Social Security.

10

11  DATED:  July 31, 2020

12

13                                                    _____

14                                                    MARIA A. AUDERO
                                                       UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24  _____
    [5]  The Court notes here that the ALJ properly evaluated Plaintiff's mental
25  functioning using the psychiatric review technique set forth in 20 C.F.R.
    § 404.1520a.  (*See* AR 29-30.)  In so doing, the ALJ explicitly and reasonably
26  found, as relevant, that Plaintiff's reported self-management abilities – which
    included driving, doing light housework, shopping independently, and preparing
27  meals – indicated that his mental impairments were nonsevere.  (AR 30 (citing AR
    902); *see* 20 C.F.R. § 404.1520a(c)(3).)
28

                                               15